RAWLS, Acting Chief Judge.
Paul F. Flaig, d/b/a Flaig’s Naval Chemical Company, filed his petition for writ of certiorari to review an order of the Pest Control Commission of Florida dated December 1, 1967, revoking his State Board of Health Business License and Identification Card.
The Petitioner has raised a number of points, but for our purposes it is sufficient to consider only two. 1. The Pest Control Commission erred in considering evidence of acts committed more than three years prior to filing the charges against him. 2. The Commission’s findings of fact were not supported by competent substantial evidence in the record.
On June 1, 1963, P. F. Flaig, President of Naval Chemical Company, entered into a contract with R. L. Dowling to treat his home in Bonifay for subterranean termites. The contract contained a clause entitled “Guarantee”, which provided for a 5-year service guarantee; upon request of the owner the treated premises would be inspected and given additional soil treatments if necessary for five years at the expense of the company, but it would not be liable for any termite damage done prior or subsequent to treatments. The next paragraph was entitled “Cost”, and it provided, “The cost of this treatment shall be $129.50. A yearly service charge of- for inspection of entire building beginning the second year of this contract.”
Mr. Dowling declined to accept that part of the contract which was to be paid for by the yearly service charge. He only paid the $129.50 which the contract clearly stated was the cost of “this” treatment— apparently the original treatment.
Pursuant to this contract Flaig treated the premises in 1963. The uncontradicted testimony is that at that time there were eight wooden piers located under the house, and the workman informed the owner that they must be removed because they would cause reinfestation. In the summer of 1965 Dowling notified Flaig that he was again having termites in the area of the kitchen. Immediately Flaig sent to the premises a workman who found that three of the wooden piers had not yet been removed, but he treated the kitchen area without charge.
In 1967 Dowling again found termites, but instead of calling Flaig, he decided to try another company which found active termites. In due course a complaint was filed against Flaig, and the Pest Control Commission sent two experts to inspect the house. They found termite damage, much of which was eight to ten years old. They also found active termites in the front part of the house — living room, dining room and one bedroom, and they found two termite tunnels, one small tunnel less than six months old and one large tunnel, three inches in diameter and estimated to be from six months to two years old. These experts testified that one treatment should last two to five years, but even with the best treatment reinfestation was possible.
The Pest Control Commission found that the treatment was improperly and negligently done in violation of Section 482.161 (6) and Rule 1701-2.04(3); that the method and equipment used was unsatisfactory; that Petitioner’s workman was improperly trained in violation of Section 482.152 and Rule 1701-2.04(4); and that Flaig violated Section 482.161(5).
*473 At the outset, Flaig’s attorney moved to suppress any evidence that occurred three years prior to the issuance of the notice of charges and hearing. We find that the Commission erred in denying the said motion and considering evidence of treatments occurring more than three years prior to the date charges were filed against Petitioner.
Subsection 482.183(1), Florida Statutes, provides:
“(1) No person shall be charged with violation of this act or any rules effective or adopted pursuant hereto more than three years after the date of such violation.”
Although the above provision was not enacted until 1965, it is effective to limit the time within which Petitioner could be charged with alleged violations occurring prior to the date of the enactment because the Pest Control Commission had no vested rights which were cut off or impaired by the statute.
Petitioner was further charged with violating the following:
Subsection 482.161(5), Florida Statutes, which reads:
“(5) Knowingly making false or fraudulent claims; knowingly misrepresenting the effects of material or methods; knowingly failing to use methods or materials suitable for the pest control undertaken
Subsection 482.161(6), Florida Statutes, which reads:
“(6) Performing pest control in a negligent manner;”
Subsection 482.152(4), Florida Statutes, which reads:
“(4) The training of personnel in the proper and acceptable methods of pest control.”
When these statutes are measured, against the facts adduced relative to the 1965 re-treatment, there is a complete absence of evidence warranting the punitive action taken by the Board. Not even Mr. Dowling testified that there were any fraudulent claims or any misrepresentations made to him as to the materials or methods used. The Petitioner used a 5% benzene hexachloride solution which is the mixture recommended by the manufacturer. There was no evidence that this chemical was not adequate or acceptable for the treatment of subterranean termites. In fact, the Commission’s attorney attempted to get the Petitioner to admit that the proper mixture of this same chemical was a much weaker solution, .8%.
The strongest evidence supporting the order was the testimony of the Commission’s expert who stated that any time a house is inspected, the workmen should go throughout the house and test all baseboards, window casings and the attic for pithy places which indicates evidence of termites. Flaig’s workman admitted that on his 1965 treatment he did not follow this procedure. On that occasion the complaint was that there were termites in the area of the kitchen. The workman located the trouble spot and treated the area by drilling holes under the windowsill and spraying. At this same time he located three wooden piers which had not been removed. We must presume this fact to be true, since it was not denied by the owner who was the only other witness with knowledge concerning the house in 1965. Some of the questions asked by a Commissioner suggested that it was negligence to treat the house without first removing wooden piers which provide the termites with access to the house. We have some reservations about any duty resting upon an exterminating company to remove the foundations of a building. There is no evidence that Flaig was under a duty to make a complete inspection of the house in 1965, considering the owner’s refusal of that portion of the contract, but if he was, this duty was waived by the owner’s failure to remove all eight wooden piers. The evi *474 dence does not show the location of the three piers, but it does indicate that the 1965 treatment of the kitchen was successful. The Commission’s experts in 1967 found termite damage, much of which was eight to ten years old, in the back of the house, but their testimony was that the active termites were in the front of the house — the living room, dining room and one bedroom.
The Commission’s order failed to state in what way Petitioner’s workman was not well trained or what training was required. It further contained a complete absence of factual findings which would support a violation of the above statutes.
As stated above, Flaig treated the.premises in 1963 pursuant to the provisions of the contract in consideration of the payment by the owner of $129.50 and, in the owner’s words, “ * * * did a splendid job”. The Commission at the outset attempted to prove that the owner had paid for annual inspections. The owner flatly stated that he did not accept this proposal and only paid for the initial 1963 treatment. Notwithstanding the owner’s failure to pay for annual inspections, in the summer of 1965, upon seeing flying ants in the kitchen, he called Flaig, who the next day sent a workman the 57-mile distance from his place of business to the owner’s home and again re-treated the premises. The owner was satisfied. In May of 1967, the owner upon becoming dissatisfied with Flaig’s treatment for roaches inside the house, called a competitor of Flaig’s, who, in addition to treating the premises for roaches, examined same for termite treatment and concluded that the 1963 treatment by Flaig had not been properly done. As a result the Pest Control Commission began its investigation.
The owner testified that when he called Flaig in 1967, Flaig told him he would again treat the premises and repair any damage caused to the house by termites, and sent a representative to his house to look at the damage. It is apparent in examining the owner’s testimony that he is satisfied. The transcript is replete with evidence reflecting that Flaig is the oldest and one of the largest pest control operators in Panama City, having established his business there in 1941; that complaints against him or his company’s operation are minimal; and that it is the policy of his company to take care of complaints “ * * * just like Sears and Roebuck. We never ask questions. If the man says he’s got anything, yes, sir, we take care of it. The customer is always right.” The customer in this instance, Mr. Dowling, substantiates this stated policy.
It is not every unsuccessful pest control treatment that is intended by the statute to be grounds for administrative action. Only when such treatment occurs in circumstances which might well result in an injury to the health of the public or which clearly manifests an intent to defraud the public or when accomplished with a callous intent to perform only colorable services as an excuse to extract money from an unsuspecting member of the public, can the statute and its sanctions be imposed upon a licensee or registered operator. This record fails in its entirety to disclose such circumstances.
It is not the function or prerogative of an administrative board intrusted with quasi-judicial powers to scan the seas of the industry it regulates and sink upon sighting a long-established business upon finding but a ripple of noncompliance with its reams of rules and regulations. It is the proper function of such a board to protect the public health and safety from incompetent or unscrupulous operators.
The petition is granted and the Pest Control Commission’s order of December 1, 1967, is quashed.
JOHNSON and SPECTOR, JJ., concur.